UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| ASHLEY D. B. M., | Case No. 6:20-cv-00248-AR |
| Plaintiff, | |
| | **OPINION AND ORDER** |
| v. | |
| | |
| COMMISSIONER SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**ARMISTEAD, Magistrate Judge**

In this judicial review of the Commissioner's final decision denying Social Security benefits, Ashley D. B. M. (her last name omitted for privacy) alleges that the Administrative Law Judge (ALJ) improperly rejected two nonexamining physicians' opinions, failed to give germane reasons to reject the lay testimony of her husband, erred in considering her obesity

Page 1 – OPINION AND ORDER

when assessing her residual functional capacity (RFC), and alternatively, failed to develop the record. (Pl.'s Br. at 5-13, ECF No. 29.) As explained below, the ALJ's decision is affirmed.[1]

## BACKGROUND AND ALJ'S DECISION

Plaintiff applied for a period of disability and Disability Insurance Benefits (DIB) under Title II, and Supplemental Security Income (SSI) under Title XVI, alleging disability that began on January 23, 2015. (Tr. 36.) Her claims, which were denied initially and upon reconsideration, were considered by the ALJ at a hearing on October 24, 2018. In denying plaintiff's applications, the ALJ followed the five-step sequential evaluation process.[2] The ALJ found that plaintiff meets the insured status requirements through December 31, 2018, and at step one, that she has not engaged in substantial gainful employment since the alleged onset date. (Tr. 38.) At step two, the ALJ determined that she has the following severe impairments: major depressive disorder, anxiety, conversion disorder, post-traumatic stress disorder (PTSD), migraine headaches, and obesity. (Tr. 39.) At step three, the ALJ found that plaintiff does not have an impairment, or combination of impairments, that meet or medically equal a listed impairment.

As for the ALJ's assessment of plaintiff's RFC, 20 C.F.R. §§ 404.1545, 416.945, the ALJ determined that plaintiff can perform light work and has the following exertional, environmental, and nonexertional limitations: she cannot climb ladders, ropes, or scaffolds; cannot be exposed to

---

[1] This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

[2] To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id.*; *see also Parra v. Astrue*, 481 F.3d 742, 746–47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

extreme heat or cold, concentrated airborne irritants, or hazards such as machinery and unprotected heights; she is limited to a quiet work environment, such as an office setting; and she can have no more than occasional interactive contact with the public. (Tr. 42.) At step four, the ALJ found that plaintiff can perform her relevant past work as an accounting clerk and general clerk. (Tr. 59.) The ALJ made alternative step five findings, determining that given her age, education, work experience, and RFC, plaintiff can perform the representative occupations of general clerk, sorter, and file clerk. (Tr. 61.)

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

## DISCUSSION

A.   ***The ALJ Did Not Err in Evaluating the Opinions of Agency Physicians Drs. Hennings and Friedburg***

Plaintiff argues that the ALJ erred in evaluating the opinions of nonexamining agency physicians Bill Hennings, Ph.D., and Irmgard E. Friedburg, Ph.D. In plaintiff's view, the ALJ erred as a matter of law by failing to discuss the relevant factors under 20 C.F.R. §§ 404.1527(c) and 416.927(c) when discounting their opinions, including the supportability of their explanations under *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017). Plaintiff also argues

Page 3 – FINDINGS AND RECOMMENDATION

that the ALJ failed to provide legally sufficient reasons to discount their attention and persistence limitations.

The Commissioner responds that Drs. Hennings and Friedburg are nonexamining agency physicians, and that the "treating source rule" discussed in *Trevizo* is inapplicable here. The Commissioner argues that the ALJ appropriately considered Drs. Hennings' and Friedburg's opinions and that the ALJ provided legally sufficient reasons, backed by substantial evidence, for discounting them. The Commissioner is correct.

On April 21, 2017, Dr. Hennings reviewed plaintiff's applications and medical records and found that Ashley can handle finances, drives, takes care of her pets, attends Alcoholics Anonymous (AA) meetings, does crafts, reads for pleasure, uses computers, attends college classes part-time, follows instructions, gets along with others, pays attention for an hour, finishes what she starts without reminders, performs household chores, has friends over, and deals with stress by writing. (Tr. 108.) Dr. Hennings opined that plaintiff has no difficulty understanding and remembering simple and complex tasks. (Tr. 112-13.) Dr. Hennings also opined that plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods, explaining that she:

> does not have the ability to sustain attention and persist in multi-step, complex tasks or duties that require multi-tasking. She is capable of sustaining attention and persisting on 3-4 step tasks if they are simple. This is to prevent increase in [mental health symptoms] such as induced somatic [complaints] and increase [symptoms] of anxiety and depression.

(Tr. 113.) Thus, Dr. Hennings determined that plaintiff was not significantly limited in her ability to complete a normal workday and workweek due to her mental health symptoms, except for

multistep, complex tasks. (Tr. 113, 115.) On June 2, 2017, Dr. Friedburg reconsidered the above evidence and agreed with Dr. Hennings' statements and opinion. (Tr. 127-28.)

The ALJ gave "little weight" to Drs. Hennings' and Friedburg's opinions that plaintiff cannot sustain attention and persisting on multistep, complex tasks or tasks that require multitasking. (Tr. 57.) The ALJ provided the following explanation:

> They noted that she is capable of sustaining attention and persisting on 3-4 step tasks if they are simple, and this is to prevent increase in mental health symptoms such as stress induced somatic complaints and increased symptoms of anxiety and depression. Their opinions are not consistent with the record as a whole. As show[n] above, her mental status examinations have essentially been normal except for occasionally depressed and/or anxious mood and affect. Her memory, attention, concentration, and thought process have consistently been noted to be normal. Moreover, she has been able to attend[] school. She testified she is a junior at Oregon State University Online, and is getting her degree in Liberal Arts, focusing on creative writing and English. She said she takes two classes for 8 credit hours. She is taking a short-story writing class and introduction to plant botany class. These activities show she has the ability to sustain attention and persist in multi-step, complex tasks that require multi-tasking. The State agency consultants did not find any limitations in her ability to interact with others; however, given that she has had depressed and/or anxious mood [on] multiple occasions, the undersigned finds the claimant can have no more than occasional interactive contact with the public.

(Tr. 57.)

As a threshold matter, the Commissioner is correct that the ALJ's evaluation of the medical opinions here are governed by the prior regulations, 20 C.F.R. §§ 404.1527(c) and 416.927(c). The agency amended its regulations governing medical opinions effective March 27, 2017. *See* 20 C.F.R. §§ 404.1527c, 416.927c. Plaintiff filed her Title II application March 22, 2017, and her Title XVI application on July 27, 2017; her applications thus straddle the effective date. Although the regulation itself does not address which regulations govern in such a situation, the Social Security Administration Program Manual System (POMS) states that the prior

regulations should be applied. *See* POMS DI 24503.050D.2.a ("If the earliest filing date of the claim is: [¶] Before March 27, 2017, use the prior rules[.]"). Cases addressing similar situations have applied the prior regulations. *See Loriel C. v. Saul*, Case No. 2:19-cv-00316-MKD, 2020 WL 4340742, *12 (E.D. Wash. July 28, 2020) (examining situation where the application dates of concurrent claims straddle March 27, 2017, and concluding that, under POMS DI 24503.050D.2.a, the ALJ properly evaluated the medical opinion evidence under old regulations); *Brent L. R. v. Kijakazi*, Case No. 2:20-cv-05977-JDE, 2021 WL 3566335, at *3 n.4 (C.D. Cal. Aug. 12, 2021) (applying 20 C.F.R. § 404.1527(c) where DIB application filed before March 27, 2017 and SSI application filed after March 27, 2017). Plaintiff also does not contest that the prior regulations govern here.

Under the prior regulations, the ALJ was tasked with weighing the various medical opinions by regulatory hierarchy. *Garrison*, 759 F.3d at 1012. The ALJ must give a treating physician's opinion "controlling weight" if it is "well-supported" and not inconsistent with other substantial evidence in the medical record. 20 C.F.R. §§ 404.1527(c), 416.927(c); *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). Unless the ALJ decides to give a physician's opinion controlling weight, an ALJ is required to explain the weight given to medical opinions, including those from non-examining sources, by considering the factors 20 C.F.R. § 404.1527(c)(2)–(6). These factors include the length of the treatment relationship and the frequency of examination, the nature of the treatment relationship, supportability, consistency with the record, and specialization of the physician. *Trevizo*, 671 F.3d at 675 (citing 20 C.F.R. § 404.1527(c)(2)–(6)). "The weight afforded a non-examining physician's testimony depends on the degree to which he provides supporting explanations for his opinions." *Garrison*, 759 F.3d at

1012 (simplified); *see also* 20 C.F.R. § 404.1527(c)(3) ("[B]ecause nonexamining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions."). Typically, nonexamining physician's opinions are given less weight than those from treating or examining physicians. *Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020).

To reject the opinion of an uncontradicted treating physician, the ALJ must provide specific, clear and convincing reasons supported by substantial evidence. *Id.*; *Garrison*, 759 F.3d at 1012. When a treating or examining physician's opinion is contradicted by another doctor's opinion, an ALJ may reject it by providing specific and legitimate reasons supported by substantial evidence. *Coleman*, 979 F.3d at 757. An ALJ errs by rejecting a medical opinion or assigning it little weight "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

Plaintiff argues the ALJ committed legal error by failing to discuss the factors under §§ 404.1527(c) and 416.927(c) when discounting Drs. Hennings' and Friedburg's opinions, relying on *Trevizo*, 671 F.3d at 676-77. Plaintiff's reliance on *Trevizo* is misplaced here. In *Trevizo*, the Ninth Circuit concluded that the ALJ erred in discounting a treating physician's opinion by ignoring the factors in § 404.1527(c), failing to follow the appropriate methodology for treating medical opinion evidence, and failing to identify legitimate reasons with supporting evidence to discount it. *Trevizo*, 671 F.3d at 676-78. Unlike the physician in *Trevizo*, Drs. Hennings and Friedburg are nonexamining agency physicians and their opinions are not entitled to controlling

Page 7 – FINDINGS AND RECOMMENDATION

weight absent consideration of the regulatory factors. Although an ALJ must consider all medical opinion evidence and the § 404.1527(c) factors as appropriate, the ALJ need not do so expressly. *See Harris v. Colvin*, 584 F. App'x 526, 527 n.1 (9th Cir. 2014) ("The agency was not required to specifically reference each factor listed in 20 C.F.R. § 404.1527(c)"); *Kelly v. Berryhill*, 732 F. App'x 558, 562 n.4 (9th Cir. May 1, 2018) ("[T]he ALJ is not required to make an express statement that she considered all the factors outlined in 20 C.F.R. § 404.1527(c)") (internal quotations omitted). Thus, the court rejects plaintiff's argument that the ALJ committed legal error in failing to explicitly mention each factor when discounting Dr. Hennings' and Friedburg's opinions.

Next, Plaintiff argues that the ALJ's analysis of Drs. Hennings' and Friedburg's opinions fails to supply the required level of specificity, relying on *Trevizo, Ghanim*, and other district court cases. In plaintiff's view, the ALJ must identify "what evidence the ALJ found inconsistent with the agency doctors' opinions and explain <u>how</u> that evidence <u>undermined the agency doctors' conclusions.</u>" (Pl.'s Reply Br. at 6, ECF No. 34 (emphasis in original).) Plaintiff contends that, because the nonexamining physicians' opinions were well-supported, the ALJ was required to link its reasoning to the evidence. The court concludes the ALJ did not err here, for two primary reasons.

First, the cases cited by plaintiff are not directly on point because they involve treating and examining physicians whose opinions are entitled to deference under the old regulations. 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."); *see also Zachary F. v. Comm'r Soc. Sec. Admin.*, Case No. 6:19-cv-01500-AC, 2021 WL

1051538, at *5 (D. Or. Mar. 19, 2021) ("[T]reating or examining physicians are owed deference and will often be entitled to the greatest, if not controlling, weight." (citing *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)).

Second, the ALJ provided sufficiently specific reasons for discounting Drs. Hennings' and Friedburg's opinions and adequately explained how that evidence undermined their opinions. The ALJ stated that their opinions were inconsistent "with the record as a whole" and expanded on that analysis by identifying specific evidence. (Tr. 57.) For example, the ALJ discussed that plaintiff's attention, memory, and concentration have been consistently normal during her mental status examinations. Inconsistency with medical evidence is a specific and legitimate basis to discount medical opinion. *Coleman*, 979 F.3d at 757 (holding that ALJ did not err in discounting physicians' opinions that conflicted with medical evidence). In the summary of medical evidence, the ALJ discussed and cited several occasions where plaintiff's mental health providers found that her attention, memory, and concentration were normal. (Tr. 51-56.) The ALJ's findings are fully supported by substantial evidence in the record. (Tr. 318, 429, 445, 449, 453, 457, 461, 476, 616, 622, 631, 680, 688, 703, 708, 713, 728.) Based on the sustained nature of plaintiff's normal concentration and attention during her mental status evaluations, the ALJ could reasonably find that Drs. Hennings' and Friedburg's moderate attention and persistence limitations were undermined by that evidence and reasonably discounted their opinions on that basis.

And the ALJ found that plaintiff's junior-level enrollment in short-story creative writing and plant botany demonstrated that she can "sustain attention and persist in multi-step, complex tasks that require multi-tasking." (Tr. 57.) Inconsistency between a physician's opinion and a

Page 9 – FINDINGS AND RECOMMENDATION

claimant's activities can provide a specific and legitimate reason for discounting it. *Ford*, 950 F.3d at 1154-55. Plaintiff argues that Drs. Hennings and Friedburg considered that she was taking college classes when they offered their opinions, yet they opined that her ability to handle multistep, complex tasks was moderately limited. According to plaintiff, because Drs. Hennings and Friedburg considered her part-time college enrollment, the ALJ was required to explain how this evidence undermined their conclusions. Plaintiff maintains that taking classes part-time online provides her with flexibility and does not inherently contradict their opinions that she cannot sustain and persist for multi-step, complex tasks. The court disagrees here.

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison*, 759 F.3d at 1010 (quotation omitted). It is unclear whether Drs. Hennings and Friedburg understood plaintiff was enrolled in university classes as a junior and which classes she was taking. (Tr. 108, 122 (stating plaintiff was enrolled in community college).) The court concludes that, on this record, the ALJ reasonably could find that plaintiff's ability to seek a liberal arts degree and take junior-level creative writing and plant botany classes conflicts with Dr. Hennings' and Friedburg's attention and persistence limitations for multi-step, complex tasks.[3] Plaintiff also identifies no other medical evidence from treating or examining physicians supporting the limitations expressed by Dr. Hennings and Friedburg that the ALJ failed to consider. The ALJ's findings are backed by substantial evidence and are a reasonable interpretation of the record. (Tr. 52, 369, 461, 449.) Accordingly, the court concludes the ALJ provided specific and legitimate reasons for discounting their opinions. *Bayliss v.*

---

[3] The ALJ also discounted plaintiff's subjective symptom testimony on this basis – a finding not challenged by plaintiff.

*Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that ALJ did not err in discounting physician's opinion that claimant has trouble paying attention, concentrating, and organizing herself without becoming overwhelmed based on evidence showing that she completed high school, obtained a college degree, and completed other training).

**B.**     ***The ALJ Did Not Err in Discounting the Lay Testimony of Plaintiff's Husband***

Plaintiff contends that the ALJ failed to properly evaluate the function report completed by her husband. "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). "[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)).

Plaintiff argues that the ALJ failed to provide germane reasons for rejecting the lay testimony of her husband. In the decision, the ALJ considered the third-party function report filed in support of plaintiff's applications. (Tr. 59, 196-203.) The ALJ considered the plaintiff's husband's lay testimony and provided several reasons to discount it, including: (1) his statement about plaintiff's activities of daily living and functional limitations are consistent with plaintiff's; (2) his statement conflicts with objective medical evidence; (3) his statements are unreliable because of his relationship with plaintiff. (Tr. 59.)

The court concludes that the lay testimony mirrors that of plaintiff. Both plaintiff and her husband stated that her condition affected her ability to lift, squat, bend, walk, sit, kneel,

Page 11 – FINDINGS AND RECOMMENDATION

climb stairs, see, remember, and complete tasks. (*Compare* Tr. 201 *with* Tr. 209.) They both stated that plaintiff had trouble socializing (*compare* Tr. 201 *with* Tr. 208), managing personal care (*compare* Tr. 197 *with* Tr. 206), and preparing meals more than once a week (*compare* Tr. 198 with Tr. 206). Both described that plaintiff's husband drives her to appointments when her symptoms flare (*compare* Tr. 199 *with* Tr. 207) and that stress and activity can trigger severe migraine headaches (*compare* Tr. 196 *with* Tr. 204-05).

The ALJ rejected plaintiff's subjective symptom statements, identifying several reasons, including their inconsistency with objective medical evidence, her treatment history, and her activities of daily living. (Tr. 56-57.) Plaintiff, however, has not challenged the ALJ's findings on her subjective symptoms. Therefore, because the ALJ identified specific, clear and convincing reasons to discount plaintiff's subjective symptom testimony, the ALJ has provided germane reasons to discount her husband's similar statements. *Molina*, 674 F.3d at 1114. Accordingly, any error by the ALJ in relying on other reasons to discount the lay testimony is harmless. *Id.* (holding that ALJ's failure to discuss lay testimony was harmless where family members did not describe any limitations beyond those described by claimant); *see also Valentine,* 574 F.3d at 694 (stating that ALJ erred in rejecting husband's lay testimony based on being an "interested party" but that ALJ provided germane reasons because ALJ provided clear and convincing reasons to discount claimant's testimony and husband provided similar testimony); *c.f. Diedrich v. Berryhill,* 874 F.3d 634, 640 (9th Cir. 2017) (stating that ALJ erred in rejecting lay testimony because it was not supported by medical evidence and that error was not harmless because none of ALJ's reasons were germane and supported by substantial evidence).

\ \ \ \ \

C.  **The ALJ Properly Considered Plaintiff's Obesity When Formulating Plaintiff's RFC**

Plaintiff argues that the ALJ ignored the effect of her obesity on her mental health in assessing her RFC. Social Security Ruling (SSR) 02-1p requires an ALJ to consider the effect of obesity on a claimant's residual functional capacity and explain whether obesity caused any physical or mental limitations. SSR 02-1p, 2002 WL 34686281, at *6-7 (Sept. 12, 2002). In plaintiff's view, the ALJ erred by failing to discuss whether her obesity affected her mental health limitations. The court disagrees.

Plaintiff's obesity is well-documented in the record. The ALJ found her obesity a severe impairment at step two and considered her obesity at step three when determining whether she met or equaled a listing. (Tr. 39-40.) When formulating her RFC, the ALJ discussed plaintiff's obesity when partially crediting the nonexamining agency medical physician's opinions, Susan Johnson, M.D., and Chandra Basham, M.D. (Tr. 112, 126.) The ALJ specifically noted that Drs. Johnson and Basham opined that plaintiff had no exertional limitations. Yet the ALJ found that plaintiff's obesity "supports further limiting her to a light exertional capacity." (Tr. 57.) The ALJ determined that "[d]ue to the combination of her obesity, migraine headaches, and conversion disorder, . . . she cannot climb ladders, ropes, or scaffolds," and cannot be exposed to extreme heat or cold, airborne irritants, or hazards such as machinery or working at unprotected heights. (Tr. 57.)

Plaintiff argues that the ALJ erred by failing to discuss how her obesity contributes to her mental clarity and depression. Plaintiff's argument misses the mark. Plaintiff points to no credited medical evidence or credited functional limitations describing how her obesity contributes to her mental health limitations that the ALJ ignored. *Burch v. Barnhart*, 400 F.3d

676, 683-84 (9th Cir. 2005) (holding that ALJ did not err in considering obesity because claimant did not identify "any functional limitations as a result of her obesity that the ALJ failed to consider"). Accordingly, the ALJ did not err in considering plaintiff's obesity.

**D.**   *The ALJ Was Not Required to Develop the Record*

Plaintiff argues, alternatively, that if disability benefits are not awarded, that the case be remanded with instructions for the ALJ to develop the record. "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). The court concludes that the ALJ did not commit harmful error, and that the record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence. Thus, the ALJ's duty to develop the record was not triggered.

## CONCLUSION

For the above reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED: January 11, 2023.

_____
JEFFREY ARMISTEAD
United States Magistrate Judge